## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Raymond M. Vorce

    v.

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration

Case No. 17-cv-224-PB
Opinion No. 2018 DNH 166

## MEMORANDUM AND ORDER

This case is not a typical challenge to a denial of Social
Security disability insurance (SSDI) benefits.  The plaintiff,
Raymond M. Vorce, claims that he has been disabled since 1994.
In 2006, an Administrative Law Judge (ALJ) determined that Vorce
was disabled, but that his current period of disability did not
begin until March 19, 1999.  The ALJ also determined that Vorce
was not entitled to benefits prior to May 4, 1998 because, on
that date, the Commission had denied Vorce's first application
for benefits and the record did not contain good cause to reopen
the first application.  Vorce appealed and another judge on this
court remanded the case to the Commission for further
proceedings because the record did not disclose whether the
Commission had in fact denied Vorce's first application for
benefits.  On remand, a different ALJ considered the issue on
the merits and determined that Vorce was not disabled prior to

March 19, 1999.  That decision is now before me on appeal.

Vorce argues that the ALJ erred by rejecting the opinions of his treating sources in favor of a non-examining doctor's opinion and by disregarding his own statements of his limitations.  For the following reasons, I affirm.

## I.    BACKGROUND

### A.  Facts

In accordance with Local Rule 9.1, the parties have submitted a Joint Statement of Material Facts.  Doc. No. 15. Because that joint statement is part of the court's record, I only briefly discuss the facts here.  I discuss further facts relevant to the disposition of this matter as necessary below.

Vorce graduated from the University of Notre Dame in 1974 with a degree in accounting.  Administrative Record (AR) 469, 657.  From 1977 to 1994, he worked in various managerial roles in business, including "Director of external rep[orting]," "branch manager," and president of a temporary employment agency.  AR 273, 421-422, 657.  In 1988, he suffered his first instance of depression when he moved from Connecticut to Maine. AR 469.  He became depressed again in 1990 when his wife suffered a miscarriage.  AR 469.  In 1993, he became depressed again when he separated from his wife.  AR 469-470.  On March 1,

1994, Vorce stopped working, claiming that his "depression," "ADD" (attention deficit disorder), and "dissociative disorder" interfered with his ability to continue running his business. AR 659. He was 41 years old. AR 249.

**B.  <u>Procedural History</u>**

1.  <u>First Application</u>

Vorce filed a claim for SSDI on April 7, 1998, AR 1419, alleging a disability onset date of March 1, 1994. AR 1414. In his application, Vorce claimed he had "attention deficit disorder," "depression," and "dissociated disorder." AR 1414. On May 3, 1998, the Social Security Administration (SSA) sent Vorce a letter stating that it required more documents to process his application. AR 651-652; <u>Vorce v. Astrue</u>, 2010 DNH 182, 2010 WL 4116835, *1. The record does not disclose whether he provided the requested information. Nor does the record reveal whether the SSA resolved his application. <u>Id.</u> *1-*2.

2.  <u>Second Application, First ALJ's Opinion</u>

Vorce filed a second claim for SSDI on March 10, 2000, AR 280, alleging the same disability onset date of March 1, 1994, AR 272. In this application, he cited "uninterrupted major depression," "attention deficit disorder," "dissociative disorder," and a "learning disability" as his disabilities. AR 272. On August 2, 2000, the SSA denied his claim. AR 86.

Vorce filed a request for reconsideration, which was denied on December 15, 2000. AR 92. Vorce then filed a request for a hearing before an ALJ, which was received by the SSA on February 21, 2001. AR 95.

On December 5, 2001, the SSA sent a letter to Vorce scheduling his hearing for December 20, 2001. AR 101. For reasons unclear in the record, the hearing did not occur on December 20, 2001. Several more hearings were scheduled between April 26, 2002 and July 3, 2002, at which time neither party appeared and the ALJ dismissed Vorce's application. AR 112. Vorce appealed this dismissal to the SSA Appeals Council (AC), which overturned the dismissal and sent his case back to the ALJ for a hearing. AR 113. After several more attempts to reschedule the hearing, ALJ Frederick Harap finally conducted a hearing on October 27, 2005. AR 21, 27.

On January 11, 2006, ALJ Harap issued a partially favorable decision on Vorce's application. AR 27. ALJ Harap determined that Vorce's 1998 application for SSDI benefits had been denied on May 4, 1998, and that this decision was final. AR 21. Therefore, ALJ Harap only considered whether Vorce was disabled between May 5, 1998 and the date of the decision, January 11, 2006. AR 21.

ALJ Harap then applied the five-step analysis required by

20 C.F.R. § 404.1520.  At step one, ALJ Harap determined that Vorce had not engaged in substantial gainful activity since the beginning of the relevant time period, May 5, 1998.  AR 22.  At step two, ALJ Harap determined that Vorce had <u>no</u> severe impairments from May 5, 1998 through March 18, 1999.  AR 24.  ALJ Harap wrote, "Careful review of the medical evidence establishes that the claimant did not seek any medical treatment for the period from May 5, 1998 until March 18, 1999."  AR 24.  ALJ Harap considered all of the medical evidence submitted by Vorce, including the evidence of Vorce's condition from 1994 through 1999, and concluded, "the claimant did not have a medically determinable impairment relevant to this decision prior to March 19, 1999."  AR 23-24.

ALJ Harap nevertheless determined that the medical evidence revealed that Vorce's condition had changed by March 19, 1999, at which time Vorce had the following severe impairments: "attention deficit hyperactivity disorder, depression and post-traumatic stress disorder."  AR 24.  ALJ Harap found that Vorce had these severe impairments from March 19, 1999 through the date of his decision, January 11, 2006.  AR 24.  At step three, ALJ Harap determined that Vorce did not have any of the impairments listed in 20 C.F.R., Subpart P, Appendix 1, which would render him disabled per se.  AR 24.  At step four, ALJ

Harap determined that Vorce's residual functional capacity (RFC) allowed him to "perform work at all exertional levels, but he is unable, on a regular and sustained basis, to understand, remember, and carry out even simple tasks and he has markedly impaired ability to use judgment on simple work-related decisions as well as moderately impaired ability to respond appropriately to supervision, coworkers and usual work situations[; and] markedly impaired ability to [respond to] pressures in a usual work setting or to respond appropriately to changes in . . . routine work." AR 25. ALJ Harap determined that, in light of this RFC, Vorce could not return to his past relevant work as a "self-employed owner of a temporary employment agency and as a certified public accountant." AR 25. At step five, ALJ Harap found that Vorce could not perform any other work and so was "disabled within the framework of Section 204.00 of Appendix 1, subpart P, Regulations No. 4," from March 19, 1999 through the date of the opinion, January 11, 2006. AR 26.

3. <u>Appeal of Partial Denial of the Second Application</u>

Vorce petitioned the AC to review only the portion of ALJ Harap's decision denying benefits for the period between March 1, 1994 and March 19, 1999. AR 13; Vorce v. Astrue, 2010 DNH 182, 2010 WL 4116835, *1. On May 21, 2009, the AC issued a

written denial of his request for review.  AR 13.

Vorce then appealed to the United States District Court for the District of New Hampshire.  Vorce v. Astrue, 2010 DNH 182, 2010 WL 4116835, *1.  He argued that the ALJ had erred by holding that his claim for benefits from March 1, 1994 through March 18, 1999 was precluded by a final order on his 1998 application for benefits.  Id.  The court agreed with Vorce and reversed the ALJ's holding.  Id. at *1-*2.  The court stated that the record did not reveal whether the Commissioner had made a final determination that Vorce was not entitled to benefits from March 1, 1994 to March 18, 1999.[1]  Id.  Therefore, the court remanded the case to the Commissioner to determine whether the Commissioner had made a final determination on the 1998 application.  Id.

4.  Second ALJ's Opinion

The Commissioner attempted to schedule another hearing before an ALJ to determine Vorce's eligibility for benefits.  AR 1126.  Vorce rescheduled several hearing dates, failed to show

---

[1] Vorce has included a copy of the May 4, 1998 letter that ALJ Harap cited as evidence that the SSA rejected his application. AR 651-652.  This letter states, "We still need the full tax forms (personal and corporate) for 1994, 1995, 1996, and 1997." The letter continues, "We need to get this information by May 19, 1998 . . . [or] your claim will be denied."  AR 651.  The letter concludes with a warning, "we cannot process your claim without this information.  Therefore, we will deny your claim if we do not hear from you by May 19, 1998."  AR 651.

up for one hearing, had his case dismissed for failure to pursue the claim, but later had the dismissal reversed by the AC. AR 1126. Eventually, ALJ Timothy Belford issued an order stating that Vorce had waived his right to personally appear and testify at a hearing, and decided the application on the merits, relying on the written filings. AR 1126. ALJ Belford determined that it was impossible to tell whether Vorce's 1998 application was administratively final. AR 1127. Therefore, ALJ Belford did not rest on stare decisis, but evaluated whether the evidence supported a determination that Vorce was disabled from March 1, 1994 through March 18, 1999. AR 1127.

ALJ Belford performed the five-step analysis required by 20 C.F.R. § 404.1520. AR 1129-1134. At step one, he determined that Vorce had not engaged in substantial gainful activity during the relevant period. AR 1129. At step two, ALJ Belford determined that Vorce had the severe impairments of "depression, anxiety and attention deficit hyperactivity disorder." AR 1129. At step three, ALJ Belford determined that Vorce did not have an impairment that rendered him disabled per se under 20 C.F.R Part 404, Subpart P, Appendix 1. AR 1129. At step four, ALJ Belford determined that Vorce's RFC permitted him to "perform a full range of work at all exertional levels but with the following nonexertional limitations: [Vorce] can attend to, remember and

carry out simple tasks in a work environment where he does not
have to interact frequently with large groups of strangers." AR
1130. Based on this RFC, ALJ Belford found that Vorce was
"unable to perform any past relevant work." AR 1133. At step
five, ALJ Belford determined that because Vorce had no
exertional limitations and could still perform simple tasks, he
could perform all unskilled jobs, of which there are a
significant number in the national economy. AR 1134. See 20
C.F.R. Part 404, Subpart P, Appendix 2 § 204.00; Social Security
Ruling (SSR) 85-15. Therefore, ALJ Belford held that Vorce was
not disabled from March 1, 1994 through March 18, 1999. AR
1134. Vorce appealed the ALJ's determination to the AC, but the
Commissioner agreed with the ALJ. AR 1116. Vorce then filed
this appeal.


## II.  <u>STANDARD OF REVIEW</u>

I am authorized under 42 U.S.C. § 405(g) to review the
pleadings submitted by the parties and the administrative record
and enter a judgment affirming, modifying, or reversing the
"final decision" of the Commissioner. That review is limited,
however, "to determining whether the ALJ used the proper legal
standards and found facts [based] upon the proper quantum of
evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st

Cir. 2000). I defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. If, however, the ALJ "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts," her findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ determines issues of credibility and draws inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. The ALJ, and not the court, must resolve conflicts in the evidence. Id.


### III. ANALYSIS

Vorce argues that the ALJ erred by giving more weight to the opinion of the non-examining State doctor than his two treating sources, and by disregarding his own statements of

limitation. Doc. No. 11-1 at 2. I address each of these arguments in turn.[2]

## A. **Evaluation of Medical Sources**

Numerous medical experts evaluated Vorce to determine the extent of his mental impairments, but he only claims that ALJ Belford erred by ignoring two: therapist Carol Adams and psychiatrist Dr. Charles Johnson. Doc. No. 11-1 at 2. Adams was Vorce's therapist from June 17, 1993 through September 12, 2002. AR 881. She stated that Vorce had "dissociative disorder"--a learning disability that affected his ability to read--and "major depression." AR 884. She stated that his divorce and the related litigation were significant sources of his depression. AR 884. She stated that he also had "isolation, denial, [an] inability to stay focused for any significant period of time, insomnia, low energy, and poor concentration." AR 885. Throughout the time she saw him, Adams observed Vorce in a "downward spiral." AR 885. In testimony at an unrelated hearing, Adams stated that when she started seeing Vorce, he was like "a full sweater," but over time "he completely unraveled." AR 888.

---

[2] ALJ Belford's decision that Vorce was not disabled prior to March 19, 1999 is consistent with ALJ Harap's earlier decision that Vorce's current period of disability did not begin until March 19, 1999. Accordingly, Vorce does not base his appeal on any claimed inconsistency between the two decisions.

Adams filled out a check-box form entitled "Medical Source Statement of Ability to do Work-Related Activities." AR 882. On the form, Adams indicated that Vorce had "extreme limitation" in his ability to "understand and remember short, simple instructions," "carry out short, simple instructions," "understand and remember detailed instructions," "carry out detailed instructions," and "make judgments on simple work-related decisions." AR 882. Adams also stated that Vorce had "extreme limitation" in his ability to "interact appropriately with the public," "respond appropriately to work pressures in a usual work setting," and "respond appropriately to changes in a routine work setting." AR 883.

Adams referred Vorce to Dr. Charles Johnson, who became Vorce's psychiatrist in 1993 and treated him until 2003. AR 469, 493. Dr. Johnson diagnosed Vorce with depression, which intensified when he began divorce proceedings with his wife, and which made him tired, irritable, and perform poorly at work. AR 469-470. Dr. Johnson initially prescribed Vorce Prozac for "major depression recurrent" and "dysthymic disorder." AR 470. Dr. Johnson saw Vorce periodically from 1993 through 1999, with significant gaps in treatment, including a gap from 1997 to 1999. AR 894-899. In October 1993, after just three months of taking Prozac, Vorce said he felt the "best he has in years."

12

AR 468, 470.  At different times throughout the relevant time period, Vorce has vacillated between feeling "fine" and "depressed."  AR 465.  In 1999, Vorce told Dr. Johnson that he believed he might have ADD.  AR 463-464.  Dr. Johnson referred Vorce to psychologist Dr. Margaret Dawson, who confirmed that he had ADD.  AR 464.

In 2003, Dr. Johnson wrote a letter summarizing his treatment relationship with Vorce, in which he stated Vorce's "dose of medication has been adjusted up and down over time, depending on his need.  However, he has done quite well on the present combination of medications, which he has been on for an extended period of time."  AR 494.  In the same letter, Dr. Johnson also noted that "Vorce has had extraordinary situational stressors in his life over the 10-1/2 years I have known him. Resolution of some of those issues in the recent past has helped him improve his condition substantially. . .  He seems to be making progress at present . . ."  AR 495.  Notably, after sending that letter to Vorce's attorney, he felt compelled to author an "addendum," which stated "Vorce's depression responded quite well to treatment; however, he has continued to have significant residual symptoms of very severe ADHD, which has interfered substantially in his ability to be gainfully employed."  AR 502.

State medical expert, Dr. S. Hoch, evaluated Vorce's medical records from March 1994 through December 1999. AR 432. He stated that Vorce had "organic mental disorders," specifically "LD [a learning disability] (reads slowly and ADHD)," and "anxiety-related disorders," which included "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." AR 432, 437. Furthermore, Dr. Hoch stated that Vorce had "mild" limitations in "activities of daily living" and "moderate" limitations in "maintaining concentration, persistence, or pace." AR 442. Dr. Hoch stated that Vorce had "major depression, dissociative disorder, [and] ADD." AR 444. Dr. Hoch credited Dr. Margaret Dawson's opinion that Vorce "is unable to return to full time self-employment (emphasis in original)," but stated that he can do "simple repetitive tasks." AR 444.

Another state evaluator, Dr. Peter Allen, also evaluated Vorce. AR 423-431. Dr. Allen examined Vorce's records on July 27, 2000 and determined that Vorce did not have any severe medical impairments. AR 423. He noted that Vorce had a learning disability, AR 423, but said that it did not inhibit him enough to be considered "severe." AR 424.

ALJ Belford considered all of these opinions when

determining Vorce's RFC.  AR 1131-1133.  ALJ Belford rejected Dr.
Allen's opinion that Vorce did not have a severe medical
impairment because the medical evidence in the record was
"sufficient . . . to warrant a finding of severity."  AR 1133.
ALJ Belford rejected Dr. Johnson's opinion that Vorce had
"marked limitations in understanding, remembering, and carrying
out detailed instructions, responding appropriately to customary
work pressures . . . and responding appropriately to changes in
a routine work setting" because the medical record before 1999
did not support that opinion.  AR 1132.  Similarly, ALJ Belford
rejected Adams' opinion that Vorce had "extreme limitations in
almost all areas of functioning" because "there is little
evidence of any significant functional deficits prior to
[1999]."  AR 1132.  The ALJ found Dr. Hoch's opinion to be
credible and persuasive because his opinion that Vorce "could
attend to, remember and carry out simple tasks . . . [but] not
frequently interact with large groups of strangers . . . [was]
consistent with the record as a whole and well supported by the
evidence available . . ."  AR 1132.

An ALJ cannot reject the opinion of a "treating source"
unless she gives "good reasons" that are "both specific . . .
and supportable."  Jenness v. Colvin, 2015 DNH 167, *6
(citations omitted).  These "good reasons" are outlined in 20

C.F.R. § 404.1527(c). This regulation states that an ALJ may reject the opinion of a treating source if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [or] inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). Furthermore, "when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." Goatcher v. U.S. Dept. of Health & Hum. Servs., 52 F.3d 288, 290 (10th Cir. 1995) (quotations and citations omitted).

An ALJ can also rely on the testimony of a non-examining medical source when that opinion is supported by the record. Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 431 (1st Cir. 1991). In Berrios Lopez, 951 F.2d at 431, the First Circuit said, "we have held that the testimony of a non-examining medical advisor . . . can alone constitute substantial evidence [upon which the ALJ can base his RFC determination], depending on the circumstances" (citations omitted).

Dr. Johnson was a "treating source" and therefore ALJ Belford was required to give his opinion controlling weight

unless it was inconsistent with the record.  See Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003).  ALJ Belford credited Dr. Johnson's description of Vorce's symptoms and his diagnosis that Vorce had depression and ADD.  AR 1132.  But, ALJ Belford rejected Dr. Johnson's opinion that Vorce's depression and ADHD "substantially interfered" with his ability to do any work because it was not supported by the medical record.  AR 1132.  Instead, the ALJ found that Vorce could still work in jobs requiring him to do simple tasks and not requiring frequent interactions with large groups of people.  AR 1132.  This opinion was supported by Dr. Johnson's own treatment records, which showed that Vorce had improved over the years, and by Vorce's own statements about his activities of daily life.

Adams, on the other hand, was not a treating source because she is not an "acceptable medical source."  20 C.F.R. § 404.1502(a) (list of acceptable medical sources does not include licensed clinical professional counselors); see Taylor v. Astrue, 899 F.Supp.2d 83, 88 (D. Mass. Oct. 22, 2012).  But, she was a "medical source" because she is licensed by the state as a licensed clinical professional counselor and offered her opinions while working in that capacity.  20 C.F.R. § 404.1502(d); Snowdon v. Colvin, No. 2:15-cv-521-JHR, 2016 WL 4766231, *5 (D. Me. Sept. 13, 2016) (licensed clinical

professional counselor was not an "acceptable medical source,"
but was a "medical source."). Because Adams was a medical
source other than a treating source, the ALJ was required to
weigh Adams' opinion based on her examining relationship with
Vorce, treatment relationship, supportability of the opinion,
consistency of her opinion with other evidence, and whether the
opinion was offered within her area of expertise, among other
factors. 20 C.F.R. § 404.1527(c).

The ALJ credited Adams' opinion that Vorce had depression
and dissociative disorder. AR 450, 1132. The ALJ rejected
Adams' opinion that these disorders would leave him totally
incapable of focusing because the record did not support such an
extensive limitation. AR 1132. The ALJ noted that there is no
evidence of difficulty in Vorce's activities of daily living,
and the evidence of poor social interactions and poor
concentration is accounted for his RFC limitation to simple
tasks with no interaction with the general public. AR 1132.

Therefore, the ALJ's RFC determination, which relied on Dr.
Hoch's opinion, Dr. Johnson's own treatment notes, and Vorce's
activities of daily living, and rejected the more severe
limitations contained in Dr. Johnson's and Adams' opinions, was
supported by substantial evidence. See Berrios Lopez v.
Secretary of Health and Human Services, 951 F.2d 427, 431 (1st

18

Cir. 1991).

**B.** <u>**Claimant's Statements of Limitation**</u>

The ALJ must consider the claimant's own statements about how his impairments limit his ability to work, but the ALJ is not required to accept these statements wholesale. 20 C.F.R. § 404.1529(a); Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). If an ALJ rejects the claimant's statements of his own limitations, "the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant." Id.

Here, the ALJ considered Vorce's own statements of how his mental impairments limited his ability to work. AR 1130-1131. The ALJ noted that Vorce claimed that he had "depression, anxiety, and attention deficit hyperactivity disorder." AR 1130. He also noted that Vorce claimed these impairments led to "feelings of being overwhelmed . . . difficulty sleeping, poor concentration, suicidal ideation, . . . difficulty keeping up with personal hygiene . . . chest pain . . . [and being] easily distracted and disorganized." AR 1130.

The ALJ considered these statements in light of the medical evidence in the record and the opinion of Dr. Hoch and determined that Vorce's impairments did not limit him as much as he claimed. AR 1131. The ALJ noted, "the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because the medical record shows that his symptoms improved with treatment and stabilized at certain points. AR 1131. Furthermore, even though Vorce claims that his depression, anxiety, and ADHD prevented him from engaging in substantial gainful activity, Dr. Hoch, whose opinion the ALJ credited, opined that Vorce would still be able to do "simple repetitive tasks." AR 444. The ALJ also considered Vorce's own statements in the "Adult Function Form" that he lived alone, did not need help with his personal grooming, prepared his own meals, shopped for himself, handled his own finances, drove himself around, read, and visited with his children. AR 297-301. Because the ALJ considered Vorce's complaints about how his impairments limited his ability to work and took them into account when limiting his RFC to simple repetitive tasks, the ALJ's opinion is supported by substantial evidence.

## IV. CONCLUSION

For the aforementioned reasons, I grant the Acting Commissioner's motion to affirm, Doc. No. 14, and deny Vorce's motion to reverse, Doc. No. 11. The clerk is directed to enter

judgment accordingly and close the case.

        SO ORDERED.


                                /s/Paul Barbadoro
                                Paul Barbadoro
                                United States District Judge


August 14, 2018

cc:   James W. Craig, Esq.
      Paula E. James-Pakkala, Esq.
      T. David Plourde, Esq.